UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LUIS FABRICO QUINTANA GOMEZ,

                Petitioner,

v.

MICHAEL FARMER et al.,

                Respondents.

_____/

Case No. 1:26-cv-854

Honorable Paul L. Maloney

**OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the Calhoun County Correctional Facility in Battle Creek, Michigan, initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will conditionally grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**Discussion**

**I.     Procedural History**

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1, PageID.44.)

In an order entered on March 19, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 3.) Respondents filed their response on March 24, 2026, (ECF No. 4), and Petitioner filed his reply on March 27, 2026, (ECF No. 5).

## II.    Factual Background

Petitioner is a native and citizen of Venezuela. (Pet., ECF No. 1, PageID.2; Notice to Appear (NTA), ECF No. 1-2, PageID.50.) On May 9, 2023, Petitioner entered the United States near Brownsville, Texas, without inspection (Pet., ECF No. 1, PageID.5.) On May 11, 2023, Petitioner was encountered by Department of Homeland Security (DHS) agents and was subsequently paroled into the United States pursuant to § 212(d)(5) of the INA, which is codified at 8 U.S.C. § 1182(d)(5), until July 11, 2023. (Form I-94, ECF No. 1-3, PageID.58–59.) On October 18, 2023, Petitioner filed an asylum application, which remains pending. (Pet., ECF No. 1, PageID.6; 2023 Form I-797C, ECF No. 1-4, PageID.61.) On October 25, 2023, Petitioner applied for and was granted Temporary Protected Status (TPS)[1] from February 28, 2024, to April 2, 2025. (Pet., ECF No. 1, PageID.6; TPS Approval Notice, ECF No. 1-5, PageID.66.) On September 10, 2025, Petitioner filed an application to renew his TPS. (Receipt Notice, ECF No. 1-5, PageID.70.)[2]

---

[1] Under 8 U.S.C. § 1254a, the Secretary for the Department of Homeland Security

> may designate a foreign state for TPS when nationals of that state cannot return there safely due to armed conflict, natural disaster, or other "extraordinary and temporary conditions," unless the Secretary "finds that permitting the [noncitizens] to remain temporarily in the United States is contrary to the national interest of the United States."

*Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1010 (9th Cir. 2025) (quoting 8 U.S.C. § 1254a(b)(1)(C)). "Such a designation permits certain nationals of the foreign state, who have continuously resided in the United States since the effective date of the designation, to register for employment authorization and protection from deportation for the duration of the TPS period." *Id.* (quoting 8 U.S.C. § 1254a(a)(1), (b)(2)). Additionally, there are other restrictions, including, for example, that applicants for TPS "must not have been 'convicted of any felony or 2 or more misdemeanors committed in the United States.'" *Id.* (quoting 8 U.S.C. § 1254a(c)(2)(B)(i)). Further, "TPS does not provide beneficiaries with a pathway to permanent resident status, nor does it include any right to petition for visas on behalf of family members in the United States or abroad." *Id.*

[2] With respect to TPS for Venezuela, "[o]n January 17, 2025, Secretary Mayorkas extended the 2023 [TPS] Designation by eighteen months, through October 2, 2026." *Nat'l TPS All. v. Noem*, 166 F.4th 739, 751 (9th Cir. 2026) (footnote and citation omitted). "The extension was set to

On December 19, 2025, ICE arrested and detained Petitioner in Grand Rapids, Michigan, while he was "legally working, delivering packages for an online company." (Pet., ECF No. 1, PageID.7.) At that time, ICE issued Petitioner a Form I-862, NTA, charging Petitioner with inadmissibility under §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA) because Petitioner is an immigrant "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General," and "who, at the time of application for admission, is not in possession of a valid unexpired [immigration or travel document]." (NTA, ECF No. 1-2, PageID.50–53.) Petitioner was scheduled for a master hearing on March 24, 2026, in the Detroit Immigration Court.[3] (Notice of In-Person Hearing, ECF No. 4-2, PageID.128.)

## III.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

---

become effective on April 3, 2025," the day after the 2023 TPS Designation was due to expire. *Id.* (citation omitted). "On January 24, 2025, DHS began drafting the decision to vacate the TPS extension" for Venezuela. *Id.* Thereafter, on January 26, 2025, "DHS began drafting a termination of Venezuela's TPS." *Id.* On January 28, 2025, Secretary Noem signed off on the decision to vacate the January 17, 2025, extension of TPS for Venezuela, meaning that the 2023 TPS Designation for Venezuela effectively expired on April 2, 2025. (*Id.*) Subsequently, on February 1, 2025, "Secretary Noem signed off on the termination [of TPS]" for Venezuela. *Id.* (citation omitted).

[3] The parties do not provide any information about the March 24, 2026 hearing.

IV.     **Exhaustion**

Respondents argue that the Court should deny Petitioner's request for habeas corpus relief because Petitioner has not exhausted his administrative remedies. Specifically, Respondents argue that Petitioner should pursue a bond hearing and, if necessary, appeal any unfavorable decision to the Board of Immigration Appeals.

The Court declines to enforce the doctrine of prudential exhaustion against Petitioner, and even if the Court were to conclude that exhaustion is warranted, the Court concludes in the alternative that waiver of exhaustion is appropriate, for the reasons set forth in the Court's exhaustion analysis in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *2–3 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *2–4 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *2–4 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *2–3 (W.D. Mich. Dec. 12, 2025).

Accordingly, the Court will proceed to address the merits of Petitioner's § 2241 petition.

V.     **Merits Discussion**

A.     **Statutory Basis for Petitioner's Detention**

Respondents contend that Petitioner is subject to the mandatory detention provisions set forth in 8 U.S.C. § 1225(b)(2) because Petitioner meets every element for detention under § 1225(b)(2), and the statute's structure and history support Respondents' interpretation.[4]

---

[4] In addition to arguing that Respondents are unlawfully subjecting Petitioner to mandatory detention under § 1225(b)(2), Petitioner contends that Respondents have unlawfully detained Petitioner despite Petitioner's TPS and, alternatively, humanitarian parole. Based on his TPS status, Petitioner seeks immediate release, alleging a violation of 8 U.S.C. § 1254a(d)(4), which provides that if a noncitizen has TPS, then the noncitizen "shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States." 8 U.S.C. § 1254a(d)(4). As set forth above, Secretary Noem vacated the extension of the 2023 TPS Designation for Venezuela and then signed off on the termination of TPS for Venezuela. *See supra* note 2. The

4

The Court concludes that § 1226(a), not § 1225(b)(2)(A), governs noncitizens, such as Petitioner, who have resided in the United States and were already within the United States when apprehended and arrested for the reasons set forth in the Court's statutory analysis in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *3–6 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *4–6 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *4–7 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *3–6 (W.D. Mich. Dec. 12, 2025).[5]

---

validity of Secretary Noem's actions regarding TPS for Venezuela is currently being litigated. In October 2025, the United States Supreme Court allowed the termination of TPS for Venezuela to take effect pending the Government's appeal and "disposition of a petition for a writ of certiorari, if such writ is timely sought." *Noem v. Nat'l TPS All.*, 146 S. Ct. 23, 24 (2025). On January 28, 2026, in *National TPS Alliance v. Noem*, 166 F.4th 739 (9th Cir. 2026), the United States Court of Appeals for the Ninth Circuit affirmed the United States District Court for the Northern District of California's finding that Secretary Noem exceeded her statutory authority by revoking TPS protections for Venezuelans and Haitians. At this time, based on the procedural history of *National TPS Alliance v. Noem*, this Ninth Circuit case does not affect the Court's analysis in this habeas action. *Cf. Nat'l TPS All.*, 146 S. Ct. at 24 (allowing the termination of TPS for Venezuelan nationals to take effect pending the Government's appeal). Therefore, although the Court will conditionally grant Petitioner's § 2241 petition for the reasons set forth herein, the Court will not grant Petitioner's request for immediate release based on Petitioner's prior TPS.

Petitioner also seeks immediate release or an individualized determination to terminate his parole, based on his previous grant of humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A). Petitioner claims that the purpose of his parole has not been accomplished. However, Petitioner acknowledges that his Form I-94 includes a parole expiration date of July 11, 2023. Because the Form I-94 indicates an expiration date, no written notice to Petitioner was required and his parole was automatically terminated on that date. *See* 8 C.F.R. § 212.5(e)(1)(ii).

[5] The Court is aware of *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), which was recently issued by the United States Court of Appeals for the Fifth Circuit, and *Avila v. Bondi*, No. 25-3248, --- F.4th ----, 2026 WL 819258 (8th Cir. Mar. 25, 2026), which was recently issued by the United States Court of Appeals for the Eighth Circuit. At this time, these non-binding cases do not change the Court's analysis.

### B.      Fifth Amendment Due Process Considerations

Petitioner also argues that his detention violates the Fifth Amendment's Due Process Clause. Respondents counter Petitioner's arguments by stating that Petitioner has received notice of the charges against him, has access to counsel, may attend hearings with an immigration judge, has the right to appeal the denial of any request for bond, and has been detained by ICE for a relatively short period of time.

The Court concludes that Petitioner's current detention under the mandatory detention framework set forth in § 1225(b)(2)(A) violates Petitioner's Fifth Amendment due process rights for the reasons set forth in the Court's constitutional analysis in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *6–8 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *7–8 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *7–9 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *6–8 (W.D. Mich. Dec. 12, 2025).

## VI.     Other Claims and Other Forms of Relief

Because the Court will conditionally grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

## VII.    Proper Respondents

Respondents argue that the Detroit ICE Field Office Director is the only proper Respondent in this action, and they seek the dismissal of all other named Respondents.[6] The Court concludes that the Detroit ICE Field Office Director is not the only proper Respondent for the reasons set

---

[6] The Court previously dismissed the Jail Administrator of the Calhoun County Jail as a Respondent. (Order, ECF No. 3.)

forth in the Court's analysis of the same argument in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *8–9 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *8–9 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *9–10 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *9–10 (W.D. Mich. Dec. 12, 2025).

To ensure that this Court's orders regarding a hearing or release will bind at least one Respondent with authority to act in the event that Petitioner is transferred out of the Western District of Michigan, the Court will retained the ICE Detroit Field Office Director, the Acting Director of ICE, and the Secretary for the Department of Homeland Security as Respondents. The Court will dismiss the United States Attorney General as a Respondent.

### Conclusion

For the reasons discussed above, the Court will enter a judgment conditionally granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days of the date of this Court's opinion and judgment with notice to the Parties as soon as practicable, no later than 24 hours prior to the scheduled hearing, or, in the alternative, immediately release Petitioner from custody.[7] The Court will also order Respondents to file a status report within six business days of the date of this Court's opinion and judgment to certify compliance with this opinion and the corresponding judgment. The status report shall include if and when the bond hearing occurred, if bond was granted or denied, and if bond was granted, the

---

[7] This Court has adopted a standard practice of requiring such a hearing within five business days, even if the Petitioner requests a deadline that is shorter or longer or only release.

conditions of the bond, or if bond was denied, the reasons for the denial. Further, the Court will dismiss the United States Attorney General as a Respondent.


Dated:   April 8, 2026                              /s/ Paul L. Maloney                          
                                                         Paul L. Maloney
                                                         United States District Judge